1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW MEINECKE, an individual,

      Plaintiff,

      vs.

CITY OF SEATTLE, WASHINGTON, DANIEL NELSON, individually and in his official capacity as lieutenant for the Seattle Police Department, ROBERT BROWN, individual and in his official capacity as lieutenant for the Seattle Police Department, and SEAN CULBERTSON, individually and in his official capacity as police officer for the Seattle Police Department,

      Defendants.

NO.   2:23-cv-00352

VERIFIED COMPLAINT

## INTRODUCTION

1.      Plaintiff Matthew Meinecke (Meinecke) brings this civil rights action under 42 U.S.C. § 1983 against Defendants City of Seattle, Washington (Seattle), Daniel Nelson (Lt. Nelson), Robert Brown (Lt. Brown), and Sean Culbertson (Officer Culbertson)   challenging city policy and application of Seattle municipal code ordinance § 12.16.010(A)(3) and police actions that effectuate a heckler's veto against

VERIFIED COMPLAINT
CASE NO.  2:23-cv-00352

Page 1

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

disfavored speech, severely restricting Meinecke's constitutionally protected religious expression in traditional public fora.

2.      Meinecke seeks injunctive relief, declaratory relief, compensatory damages, and nominal damages against defendants in this cause of action.

3.      This cause arises from two separate incidents and an ongoing enforcement of "time, place, and manner" restrictions and application of § 12.16.010(A)(3) that have infringed on and continues to infringe on Meinecke's constitutional rights to free speech and due process as guaranteed in the First and Fourteenth Amendments to the United States Constitution.

4.      Defendants have deprived and will continue to deprive Meinecke of his constitutional rights as provided in the First and Fourteenth Amendments to the United States Constitution unless he obtains relief in this cause of action.

5.      Each and every act of defendants as alleged herein was committed under the color of state law and authority.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over claims for injunctive relief and damages under 28 U.S.C. §§ 1331 and 1343, the claim for declaratory relief under 28 U.S.C. §§ 2201 and 2202, and the claim for costs and attorney fees under 42 U.S.C. § 1988.

7.      Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b).  All claims originate and all parties reside in this district.

**PARTIES**

8.      Meinecke is a resident of Bellevue, Washington.

9.      Defendant Seattle is a municipal governmental authority that is established, organized, and authorized under and pursuant to the laws of the State of Washington.

10.     Defendant Lt. Nelson is a lieutenant with the Seattle Police Department. He is sued in his individual and official capacities.  In his official capacity, Lt. Nelson is charged with enforcing Seattle ordinances and policies as interpreted and applied by Seattle through the Seattle Police Department.

11.     Defendant Lt. Brown is a lieutenant with the Seattle Police Department. He is sued in his individual and official capacities.  In his official capacity, Lt. Brown is charged with enforcing Seattle ordinances and policies as interpreted and applied by Seattle through the Seattle Police Department.

12.     Defendant Officer Culbertson is an officer with the Seattle Police Department.  He is sued in his individual and official capacities.  In his official capacity, Officer Culbertson is charged with enforcing Seattle ordinances and policies as interpreted and applied by Seattle through the Seattle Police Department.

## STATEMENT OF FACTS

### *Meinecke's Public Religious Speech*

13.     Meinecke is a Christian who is compelled to share the merits of Christianity with others in public places.

14.     Meinecke seeks to evangelize, explaining how everyone sins and falls short of the glory of God but can find salvation by accepting Jesus Christ as lord and savior.  He refers to this message as the gospel.

15.     To maximize his evangelistic efforts, Meinecke goes to public places near well-attended events, which offers him an opportunity to share his message with many people in a short period of time.

16.     When he evangelizes, Meinecke typically holds up a sign, hands out literature, and wears expressive apparel, with scriptural references.  He also engages in conversation and answers questions and concerns to best of his ability.  His primary means of communication is to read the Bible aloud.

17.     Meinecke adheres to what he believes is a biblical mandate to preach the word of God.

18.     Meinecke views Bible reading as the most effective and direct way for him to convey the gospel because it does not include his personal views or commentary, just the word of God.

19.     Meinecke does not wish to insult, offend, or embarrass anyone.  He only wants people to consider the merits of Christianity.

20.     When conducting his expressive activity, Meinecke is careful not to block passageways.

21.     Meinecke is occasionally accompanied by his friend David Duggar (Duggar) when he speaks in public.

*Seattle Imposes "Time, Place, and Manner" Restrictions and its Obstruction Ordinance to Facilitate a Heckler's Veto Against Disfavored Speakers in Traditional Public Fora*

22.     Seattle maintains an ordinance in Seattle Municipal Code entitled "Obstructing a police officer" found at § 12A.16.010 of the code.

23.     A subsection of this ordinance, § 12.A.16.010(A)(3) reads: "A person is guilty of obstructing a police officer if, with knowledge that the person obstructed is a public officer, he or she…[i]ntentionally refuses to cease an activity or behavior that creates a risk of injury to any person when ordered to do so by a police officer[.]"

24.     As interpreted and applied by Seattle, § 12A.16.010(A)(3) can be invoked against a speaker engaging in protected speech in a traditional public forum to shut down the speech.

25.     If the speech receives a hostile reaction to it such that a police officer believes the situation "creates a risk of injury" to the speaker, the police officer can order the speaker to stop his speech and leave the traditional public forum as part of what the Seattle police department calls a "time, place, and manner" restriction.

VERIFIED COMPLAINT
CASE NO.

Page 4

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

26.     Should the speaker refuse to depart from the area, the police officer can arrest the speaker and charge him for violating § 12A.16.010(A)(3).

27.     Seattle's use of so-called "time, place, and manner" restrictions and application of § 12A.16.010(A)(3) establishes a government-sanctioned heckler's veto, granting those who oppose speech with the power to censor it by simply being hostile toward it.

28.     During roll call, Seattle police commanders remind police officers in their precinct how to handle First Amendment speakers and when/where to enforce "time, place, and manner" restrictions and apply § 12A.16.010(A)(3).

*Seattle Police Officers Ban Meinecke's Evangelistic Speech on Public Ways Outside of Abortion Rally and Arrest Him for Violating § 12A.16.010(A)(3)*

29.     On June 24, 2022, around 4:45 p.m., Meinecke went to a bricked public walkway by Second Avenue outside the Jackson federal building in downtown Seattle to share his Christian faith with others.

30.     Meinecke went to this particular spot outside the federal building due to the significant number of people who were gathering in the area to support abortion rights.

31.     On this date, the Supreme Court rendered the *Dobbs v. Jackson Women's Health Organization*, the decision overturning *Roe v. Wade*.

32.     The Supreme Court decision prompted public protest in Seattle, and predominantly in the downtown area.  Protestors staged a gathering on Second Avenue in front of the Jackson federal building with intentions to march as a form of protest.

33.     Several attendees also gathered in the walkway space where Meinecke was located.

34.     Meinecke did not come to this event to condemn abortion, or speak on this topic, but to convey his faith in Christianity to the people who were in the area.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

35.    Meinecke walked back and forth on the pedestrian walkway with a sign and read from verses in the Bible, specifically, from the book of John found in the Bible.  He also handed out Christian literature to willing recipients.

36.    After reading scriptural passages for about an hour, covering approximately twelve chapters in the book of John, several protestors began to surround Meinecke.

37.    These protestors did not threaten Meinecke, but he was uncomfortable with their close presence and walked away from them to avoid any possible conflict.

38.    Meinecke walked over to the intersection with Marion Street, however, a few protestors followed and began to surround him in that space as well.

39.    An unidentified protestor took Meinecke's Bible away from him.

40.    Undeterred, Meinecke pulled out another Bible and continued reading from the book of John.

41.    But approximately fifteen minutes later, a different unidentified individual grabbed his second Bible and ripped pages from it and threw the torn pages on the ground.

42.    Soon after, several Antifa protestors, identified by their black clothing, black sunglasses, and black masks, physically forced Meinecke to leave the space where he was standing.  Meinecke did not engage with these protestors but took hold of a nearby sawhorse located on Second Avenue so he could remain in the same location and continue with his speech.

43.    However, the Antifa protestors picked up Meinecke and the sawhorse he was holding, and carried him to the other side of Marion Street near a sidewalk in front of the Exchange Building, and dropped him on the pavement there.

44.    Wanting to continue with his gospel message, Meinecke walked over to a sidewalk plaza on the other side of the street from the federal building, on Second

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

Avenue, in front of Docusign Tower close to the intersection with Marion Street, to avoid any further problems with protestors.

45.     In this location, Meinecke was standing approximately 30 feet away from where individuals were gathering for the abortion rally march on Second Avenue, well out of the way of the individuals participating in the march.

46..     Meinecke began to read what was left of his second Bible and held up a sign with a scriptural message, addressing individuals who were in the vicinity.

47.     As he was standing there, another group of attendees came up to Meinecke and an unidentified protestor knocked Meinecke down and took one of his shoes away from him.

48.     Before long, several Seattle police officers from the west precinct arrived on the scene, around eight to ten in number, including Lt. Nelson and Officer Culbertson.

49.     Prior to deploying to the scene of the abortion rally, earlier that day, Lt. Nelson, Officer Culbertson, and other police officers in the west precinct attended a roll call conducted by Seattle Police Department commanders, who reminded the police officers how and when to impose "time/place/manner" restrictions.

50.     The protestors around Meinecke disbursed as soon as the police arrived.

51.     Meinecke was initially grateful for the police presence.  However, the police officers did not offer to help Meinecke. While Meinecke was still on the ground, grimacing from the attack, police officers ordered Meinecke to leave the area.

52.     Lt. Nelson, who was acting as the supervisory officer on the scene, instructed police officers to apply a "time, place, and manner" restriction on Meinecke and, in compliance, Officer Culbertson ordered Meinecke to go across Madison Street to other side of the street.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

53.     Meinecke did not want to go to this new location.  He wanted to share the gospel in a space where abortion protestors and attendees could receive his message. And with the "time, place, and manner" restriction, Seattle police officers were forcing him to stand a significant distance away from where individuals were gathering and in a spot where the march would not pass.

54.     Meinecke advised the police officers that he was not breaking any laws (unlike those who attacked him) and that he wished to stay on the sidewalk plaza bordering Second Avenue and convey his Christian message.

55.     The police officers reiterated to Meinecke that he had to leave, indicating that he could no longer be in a place where abortion protestors would hear his message.  Meinecke refused, reminding the police officers of his constitutional right to speak on the public way.

56.     Lt. Nelson then directed police officers there to arrest Meinecke for obstruction, § 12A.16.010(A)(3).  He also called in for back up, including a police van to escort Meinecke away from the area and to the police station in the west precinct.

57.     Police officers arrested Meinecke, handcuffed him while he was still on the ground, and took what was left of his Bible and other belongings. Officer Culbertson was the primary arresting officer.

58.     More police officers arrived by bicycle, car, and van.  Lt Nelson directed the van go around and behind the march to pull onto Second Avenue after the abortion rally marchers had cleared.

59.     The abortion rally participants began to march, taking a left onto Marion Street, walking in that direction.  While this march was taking place, Seattle police officers restrained Meinecke, keeping him from interacting with protestors or attendees.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

60.     Meinecke objected to the police officers restraining him, handcuffing him, and taking his Bible.  He pointed out how he had done nothing wrong and asked the officers to let him go so he could share his message.

61.     The police officers refused to release Meinecke.  They kept Meinecke in handcuffs and kept their hands on him, pressing him down on the ground, keeping him from leaving or engaging in his speech.

62.     Meinecke was deeply troubled by the arrest and silencing of his speech. He repeatedly expressed his right to be in a public place and speak under the First Amendment, but the police officers disagreed with this assessment, and told Meinecke that he had no such right, indicating that they were detaining him for his own good.

63.     Meinecke reminded the police officers that he did not seek their help or want their help, he only wanted to be left alone.

64.     The police officers did not relent, however.  They kept him in handcuffs and waited for the abortion march to pass on Marion Street before taking Meinecke to the police van.

65.     Approximately ten minutes later, a couple of police officers lifted Meinecke off the ground and walked him to a nearby planter behind a Wells Fargo sign and forced him to sit on the planter, with his back to the remaining marchers.

66.     Several minutes later, after the abortion march moved on from the Marion Street intersection, several police officers escorted Meinecke to the police van that had pulled up on Second Avenue and put him in the back of it.

67.     Seattle police officers determined that they needed to detain Meinecke at the police station to keep him from speaking to anyone attending the abortion rally. Officer Culbertson instructed police officers going the precinct to keep Meinecke at the precinct for two hours so he could not go back and speak.

VERIFIED COMPLAINT
CASE NO.

Page 9

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

68.     Police officers took Meinecke to the west precinct in a police van.  There, police officers took his mug shot, searched through Meinecke's belongings, and put him in a holding cell.

69.     Seattle police officers did not book Meinecke, but, as instructed, they intentionally kept Meineke in the precinct for at least 2 hours until after the abortion rally had ended.

***Seattle Police Officers Ban Meinecke's Evangelistic Speech in Public Park Outside of PrideFest and Arrest Him for Violating § 12A.16.010(A)(3)***

70.     A couple of days later, on Sunday, June 26, 2022, Meinecke went to the Seattle Center, a public park in Seattle, around 12:15 p.m., to share his Christian faith again.

71.     The annual Seattle PrideFest was occurring in the park this day and Meinecke had long planned to attend the event for evangelism purposes.

72.     As Meinecke approached the park, he did not encounter any physical barriers to entrance into the park or detect a need for more or ticket for entry.  The PrideFest event as well as the park itself were free and open to the general public.

73.     He went to a grassy area close to some shrubbery on the outskirts of the Seattle Center and outside of the PrideFest event, set up a lawn chair that he brought with him, sat down, and started reading verses from the Bible, specifically, the book of Romans, conveying a gospel message.

74.     Meinecke spoke in a conversational tone.  He did not use any form of amplification for his speech.

75.     Initially, Meinecke's speech went largely unnoticed with many individuals walking by without interacting with him or apparently noticing him.  But eventually some attendees did notice him, with one attendee taking a selfie with him, and a couple of others dancing near him.  Two other attendees held up a flag in front of Meinecke in an apparent attempt to keep people from seeing him.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

76.     Later on in the day, a couple of attendees stood close to Meinecke and howled and barked like dogs, and mocked Meinecke, while he read passages from the Bible.  Meinecke did not engage with them.  He continued to read his Bible in a conversational tone.

77.     Thereafter, an unidentified individual approached Meinecke and poured water on his Bible.

78.     Though some pages were soaked, Meinecke continued to read scripture aloud, and his speech was unimpeded for at least a couple of hours.

79.     However, at that point in time, several attendees started to gather around Meinecke and some yelled at him.

80.     Meinecke did not perceive that he was in danger of any physical harm. He refrained from responding to these remarks and continued to read the Bible.

81.     Soon thereafter, approximately ten police officers soon came to the scene, including Lt. Nelson and Lt. Brown.

82.     During roll call that day at the west precinct, Seattle police commanders reminded these and other police officers how to handle First Amendment speakers and when/where to enforce "time, place, and manner" restrictions.

83.     The police officers that came to the scene were nearby or already on site at the Seattle Center when the protestors approached Meinecke.

84.     Police officers asked Meinecke to stop his speech and leave the Seattle Center.

85.     Meinecke declined to leave.  He did not believe a hostile reaction should cause him to lose his right to speak in a public park.  He tried to continue reading his Bible.

86.     While Meinecke was interacting with police officers, an attendee was yelling at police officers, demanding they get Meinecke out of the park.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

87. Lt. Nelson and Lt. Brown decided to impose a "time, place, and manner" restriction on Meinecke and ordered him to leave the Seattle Center.

88. Lt. Brown told Meinecke the police were imposing a "time, place, and manner" restriction on him and that he needed to leave the park immediately.

89. Meinecke reminded Lt. Brown that he had done nothing wrong and asserted his constitutional right to speak.

90. Lt. Brown contacted someone with his radio while other police officers stood in close proximity to Meinecke as he sat in his chair and read passages. During this time, several attendees mocked Meinecke.

91. Approximately five minutes later, Lt. Nelson and Lt. Brown determined that Meinecke was violating § 12A.16.010(A)(3) and that they would arrest him and charge him.

92. Lt. Brown addressed Meinecke again. He told Meinecke that the police could no longer stand by due to the risk to public safety that Meinecke posed by remaining in the park and said the risk would be mitigated if Meinecke left the park entirely.

93. Meinecke replied that he was not in danger.

94. Lt. Brown directed police officers to arrest Meinecke for violating § 12A.16.010(A)(3).

95. Following this directive, the police officers handcuffed Meinecke and physically escorted him out of the park as attendees cheered the police action. Officer Daane was the primary arresting officer.

96. The police officers took Meinecke to a police vehicle, placed him in it, and drove him to west precinct for booking and detention.

97. They booked Meinecke at the precinct, took his mug shot and fingerprints, and released him from custody approximately five hours later after he posted bond.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

98.    Meinecke was charged for obstructing a police officer under § 12A.16.010(A)(3).  A couple of days later, on the date of his hearing, Seattle informed it was no longer pursuing charges against him regarding this incident, but in the written notice, Seattle warned that it could bring up charges for this incident at a later time.

### Meinecke's Efforts to Resolve his Concerns Without Litigation

99.    Meinecke was deeply troubled by the actions of Seattle police department on June 24, 2022 and 26, 2022. On both occasions, Meinecke believed they should have arrested those who assaulted him and instead they arrested him, though he did not retaliate or do anything wrong.

100.    Meinecke filed a formal charge with the Seattle police department regarding the mistreatment he received.

101.    Meinecke was also concerned about his ability to speak on public ways in the future, including the PrideFest scheduled for summer of 2023.

102.    He sought legal counsel to help him, and, on October 3, 2022, Meinecke forwarded correspondence through legal counsel to the Chief of Police and City Attorney for City of Seattle, seeking relief from the City's practice of facilitating a heckler's veto.

103.    Highlighting the two incidents on the public sidewalk in front of the abortion rally and in public park during the PrideFest event, Meinecke questioned the constitutionality of the City's policy and practice, describing how police officers precluded Meinecke from sharing his message because others disagreed with his message.

104.    The letter expounded on how Seattle's actions burden Meinecke's free speech and the reasons why the City's policy and practice is unconstitutional.  He asked for written assurance from Seattle officials that the City refrain from

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

prohibiting him from speaking in public areas due to poor or hostile reaction to his religious speech.

105.    The City Attorney's office subsequently called about the letter to confirm their receipt of it, but despite multiple phone call follow-ups with the City Attorney's office, Seattle failed to respond to Meinecke's letter or concerns.

106.    On January 10, 2023, Seattle's director of police accountability reported its findings to Meinecke regarding the June 26, 2022 incident that occurred at Seattle Center.

107.    The director's report acknowledged the underlying facts of Meinecke's arrest, that Meinecke read religious passages from the Bible aloud to attendees of the festival, that several attendees objected to his speech, that police officers ordered Meinecke to leave the park as a "time, place, and manner" restriction, and that the police officers arrested Meinecke when he declined to leave for purportedly violating § 12A.16.010(A)(3).

108.    The director of police accountability concluded that Seattle police officers acted and  followed policy appropriately in requiring Meinecke leave the public park when others posed a threat to him and that the police officers properly arrested Meinecke when he refused to leave the park voluntarily.

109.    In that Meinecke was not exonerated by police department findings and did not receive the assurance he was seeking from the City Attorney's office , his only viable option for relief is litigation.

## FIRST CAUSE OF ACTION

### *Violation of Free Speech*

110.    Meinecke's religious expression constitutes protected speech under the Free Speech Clause of the First Amendment to the United States Constitution.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

111.    Meinecke challenges Seattle's invalid "time, place and manner" restriction and application of § 12A.16.010(A)(3) to his religious expression that serve to silence his speech in traditional public fora.

112.    Seattle's use of "time, place, and manner" restrictions and application of § 12A.16.101(A)(3), and related policies and practices, including the heckler's veto the City imposes in traditional public fora:

    a.  are vague and overbroad;

    b.  discriminate against speech because of its content and viewpoint;

    c.  chill the free speech of Meinecke and other third-party citizens;

    d.  allow for the exercise of unbridled discretion;

    e.  lack narrow tailoring, fail to achieve any legitimate government purpose;

    f.  and fail to leave open ample alternative avenues for the expression.

113.    Defendants have no compelling or significant reason that can justify their restriction on Meinecke's religious speech.

114.    Defendants' policies and practices and interpretation of § 12A.16.010(A)(3), and the enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Meinecke respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

### *Violation of Due Process Clause*

115.    Defendants' policies and practices and interpretation of § 12A.16.010(A)(3) are vague and lack sufficient objective standards to limit the discretion of city officials and police officers, providing Defendants with ample

opportunity to enforce the policies, practices, and ordinance in an *ad hoc*, arbitrary, and discriminatory manner.

116.    Defendants have no compelling or legitimate reason that can justify their vague policies, practices, and ordinance.

117.    Defendants' policies, practices, and ordinance, and their application to Meinecke, therefore violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Meinecke respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

### THIRD CAUSE OF ACTION

#### *Unlawful Arrest and False Imprisonment on June 24, 2022*

118.    Defendants arrested and detained Meinecke while acting under the color of authority as police officers for the Seattle Police Department on June 24, 2022.

119.    Defendants handcuffed and physically restrained Meinecke by force on the scene, in a police van, and later at the police precinct, against his will, before finally releasing him.

120.    Defendants had no lawful basis for restraining, confining, or detaining Meinecke for any length of time.  They retained Meinecke and for an extended period of time to keep him from engaging in free speech.

121.    The acts of Defendants as set forth above constitute an unlawful arrest and false imprisonment in violation of Fourth Amendment and Fourteenth Amendment to the United States Constitution.

WHEREFORE, Meinecke respectfully prays the Court grant the compensatory relief set forth hereinafter in the prayer for relief.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

1

**FOURTH CAUSE OF ACTION**

2

*Unlawful Arrest and False Imprisonment on June 26, 2022*

3      122.    Defendants arrested and detained Meinecke while acting under the

4  color of authority as police officers for the Seattle Police Department on June 26, 2022.

5      123.    Defendants handcuffed and physically restrained Meinecke by force on

6  the scene, in a police van, and later at the police precinct, against his will, before

7  finally releasing him.

8      124.    Defendants had no lawful basis restraining, confining, or detaining

9  Meinecke for length of time.  They retained Meinecke and for an extended period of

10  time to keep him from engaging in free speech.

11      125.    The acts of Defendants as set forth above constitute an unlawful arrest

12  and false imprisonment in violation of Fourth Amendment and Fourteenth

13  Amendment to the United States Constitution.

14      WHEREFORE, Meinecke respectfully prays the Court grant the compensatory

15  relief set forth hereinafter in the prayer for relief.

16

**PRAYER FOR RELIEF**

17      WHEREFORE, Meinecke respectfully prays for relief in that this Court:

18      A.    Assume jurisdiction over this action;

19      B.    Enter a judgment and decree declaring the actions taken by Defendants

20  on June 24, 2022, in restraining Meinecke and prohibiting him from conveying his

21  religious speech on public ways, violated Meinecke's constitutional rights,

22  particularly, his rights to free speech and due process;

23      C.    Enter a judgment and decree that the actions taken by Defendants on

24  June 24, 2022, constituted unlawful arrest and false imprisonment of Meinecke in

25  violation of his constitutional rights;

26      D.    Enter a judgment and decree declaring the actions taken by Defendants

27  on June 26, 2022, in restraining Meinecke and prohibiting him from conveying his

---

VERIFIED COMPLAINT                    Page 17
CASE NO.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

religious speech on public ways, violated Meinecke's constitutional rights, particularly, his rights to free speech and due process;

E.     Enter a judgment and decree declaring that the actions taken by Defendants on June 26, 2022, constituted an unlawful arrest and false imprisonment of Meinecke in violation of his constitutional rights;

F.     Enter a judgment and decree declaring City of Seattle's policy and practice of using "time, place, and manner" restrictions and applying § 12A.16.010(A)(3) to prohibit speech in traditional public fora due to hostile reaction are unconstitutional, violating Meinecke's constitutional rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

G.     Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from using "time, place, and manner" restrictions and applying § 12A.16.010(A)(3) to prohibit free speech in traditional public fora due to hostile reaction to the speech;

H.     Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

I.     Award Meinecke compensatory damages in an amount according to proof for violation of constitutional rights that occurred on June 24, 2022 and June 26, 2022;

J.     Award Meinecke nominal damages in the amount of $1.00 as an important vindication of his constitutional rights for constitutional violations on June 24, 2022 and June 26, 2022;

K.     Award Meinecke punitive damages for egregious and outrageous actions of Defendants;

VERIFIED COMPLAINT
CASE NO.

Page 18

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

1       L.    Award Meinecke his costs and expenses of this action, including

2  reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable

3  law; and

4       M.    Grant such further relief as appears to this Court to be equitable and

5  just.

7       DATED this March 10, 2023

8                              ELLIS, LI & McKINSTRY PLLC

10                             By:  *s/Keith A. Kemper*

                                 Keith A. Kemper, WSBA No. 19438
11                                  1700 Seventh Avenue, Suite 1810
                                 Seattle, WA 98101-1820
12                                  Telephone: (206) 682-0565
                                 Fax: (206) 625-1052
13                                  Email: kkemper@elmlaw.com

15                                  Nathan W. Kellum (*pro hac vice* to be filed)
                                 TN Bar #13482, MS Bar #8813
16                                  CENTER FOR RELIGIOUS EXPRESSION
                                 699 Oakleaf Office Lane, Suite 107
17                                  Memphis, TN 38117
                                 Phone: (901) 684-5485
18                                  Fax: (901) 684-5499
19                                  Email: nkellum@crelaw.org

20                                  *Attorneys for Plaintiff Michael Meinecke*

VERIFIED COMPLAINT
CASE NO.              Page 19

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

1

## VERIFICATION OF COMPLAINT

2      I, Matthew Meinecke, a citizen of the United States and a resident of Bellevue,

3  Washington, hereby declare that I have read the foregoing Verified Complaint and the factual

4  allegations therein, and the facts as alleged therein are true and correct.

5

6

7

8                                              Matthew Meinecke

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Verified Complaint - 18                                  Center for Religious Expression
    Case #                                           699 Oakleaf Office Lane, Ste. 107
                                                                  Memphis, TN 38117
                                                                       901-684-5485