The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW MEINECKE.,

Plaintiff,

v.

CITY OF SEATTLE, *et al.*,

Defendants.

NO. 23-cv-352

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff Matthew Meinecke filed this civil rights action against the City of Seattle and three members of the Seattle Police Department, challenging city policy and application of Seattle municipal code ordinance § 12A.16.010(A)(3) by the police, which are alleged to "severely restrict[] Meinecke's constitutionally protected religious expression in traditional public fora." Compl. ¶ 1, ECF No. 1.  Currently pending before the Court is Plaintiff's motion for a preliminary injunction, ECF No. 12.  Mr. Meinecke asks the Court to enjoin Defendants "from enforcing 'time, place, and manner' restrictions and applying Seattle municipal code ordinance § 12A.16.010(A)(3) to eliminate protected speech in traditional public fora whenever they believe individuals opposing

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 1

1  the speech will act hostile toward it." *Id.* at 1–2. Having reviewed the motion materials,[1] the record

2  of the case, and the relevant legal authorities, the Court will deny Plaintiff's motion. The reasoning

3  for the Court's decision follows.

## II.   BACKGROUND

Mr. Meinecke alleges that this action arises from two separate incidences in June 2022, during which he was arrested for obstructing a police officer under Seattle Municipal Code § 12A.16.010(A)(3).[2] Compl. ¶¶ 3, 29, 70. While the parties view the facts differently, there do not appear to be any real disputes over the events that occurred on those two dates. And the evidence on record supports the factual descriptions of those events.

Mr. Meinecke is a devout Christian, who believes he is compelled to evangelize in public places near well-attended events so he can share his gospel message with many people in a short period of time. *Id.* ¶¶ 13–15. On June 24, 2022, the United States Supreme Court rendered its decision overturning *Roe v. Wade*,[3] and a significant number of people were gathering outside the federal building in Seattle to express their support for abortion rights. *Id.* ¶¶ 29–31. Around 4:45 p.m., Mr. Meinecke went to a public walkway outside the federal building where protestors were gathered. *Id.* ¶¶ 29–30. He walked back and forth on the pedestrian walkway, holding up a sign, reading from the Bible, and handing out Christian literature. *Id.* ¶ 35. After about an hour, several protestors began to surround him. *Id.* ¶ 36. Feeling uncomfortable with their close presence, Mr.

---

[1] Including multiple exhibits with videos, Defendants' response in opposition, ECF No. 17, and Plaintiff's reply, ECF No. 19.

[2] The ordinance provides, in pertinent part: "A person is guilty of obstructing a public officer if, with knowledge that the person obstructed is a public officer, he or she . . . [i]ntentionally refuses to cease an activity or behavior that creates a risk of injury to any person when ordered to do so by a public officer[.]" Seattle Municipal Code § 12A.16.010(A)(3); Pl.'s Mot. Ex. B, ECF No. 12–3.

[3] In *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (Jun. 24, 2022), the Court held that the federal constitution does not provide a right to abortion, overruling *Roe v. Wade*, 410 U.S. 113 (1973).

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 2

Meinecke crossed the street, but some protestors followed him and began to surround him there as well. *Id.* ¶¶ 37–38. One protester took Mr. Meinecke's Bible away from him, so he pulled out another Bible and continued reading. *Id.* ¶ 39–40. About fifteen minutes later, another protestor grabbed Mr. Meinecke's Bible and ripped pages from it, throwing the torn pages on the ground. *Id.* ¶ 41. Several protestors physically forced Mr. Meinecke to leave the space by carrying him and the sawhorse that Mr. Meinecke had grabbed and dropping him on the pavement. *Id.* ¶¶ 42–43. Mr. Meinecke then walked over to a sidewalk plaza by the federal building and began reading what was left of his second Bible. *Id.* ¶¶ 44–46. At this location, another group of protestors came up to him and one of them knocked him down and took one of his shoes. *Id.* ¶ 47. Several Seattle police officers arrived, including Lt. Nelson and Officer Culbertson, and the protestors around Mr. Meinecke disbursed. *Id.* ¶¶ 48–50. Officer Culbertson ordered Mr. Meinecke to go across to the other side of the street. Mr. Meinecke made clear that he did not want to go to the new location because he would be a significant distance away from where the protestors were gathering, and therefore, refused to leave. *Id.* ¶¶ 52–55. The police officers arrested Mr. Meinecke for obstruction, thereby preventing him from interacting with the protestors. *Id.* ¶¶ 56–66. He was kept at the precinct for two hours and released after the abortion rally had ended. *Id.* ¶¶ 67–69.

On June 26, 2022, the annual Seattle PrideFest was taking place at the Seattle Center, a public park. *Id.* ¶ 70. Mr. Meinecke entered the park around 12:15 p.m., set up a lawn chair on a grassy area on the outskirts of the park, and started reading aloud from the Bible. *Id.* ¶¶ 70–73. Eventually some PrideFest attendees took notice, dancing near him, holding up a flag to keep people from seeing him, some made loud noises so he could not be heard, and one individual poured water on his Bible. *Id.* ¶¶ 75–77. Although some pages were soaked, Mr. Meinecke was able to continue reading his Bible aloud for another couple hours without interference. *Id.* ¶ 78. At some point,

several PrideFest attendees started to gather around him, yelling at him. *Id.* ¶ 79. Some nearby police officers approached the scene, and Mr. Meinecke was asked to move to a public area located outside the park. *Id.* at ¶¶ 81–84. Mr. Meinecke refused to move and continued to read his Bible aloud. *Id.* ¶ 85. A PrideFest attendee yelled at the police officers and demanded they remove Mr. Meinecke from the park. *Id.* ¶ 86. Police officers, Lt. Nelson and Lt. Brown, informed Mr. Meinecke that they were imposing a "time, place, and manner" restriction on him and ordered him to leave the park, but Mr. Meinecke asserted his right to speak and continued to sit in his chair and read his Bible aloud. *Id.* ¶¶ 87–89. Several attendees continued to mock him while police officers stood closeby. *Id.* ¶ 90. Lt. Brown told Mr. Meinecke that he was posing a risk to public safety and again ordered him to move. *Id.* ¶ 92. When Mr. Meinecke refused to obey their order to move, the police arrested Mr. Meinecke for obstruction, handcuffed him, and escorted him out of the park as attendees cheered. *Id.* ¶¶ 93–95. He was taken to the precinct, charged with violating § 12A.16.010(A)(3), and was released about five hours later after bond was posted. *Id.* ¶¶ 96–97. At his hearing, Mr. Meinecke was informed that the City was dropping the charges against him. *Id.* ¶ 98.

Troubled by the actions of the Seattle police department on June 24 and 26, 2022, Mr. Meinecke filed a formal complaint regarding his perceived mistreatment. *Id.* ¶¶ 99–100. He obtained legal counsel and forwarded correspondence to the Chief of Police and City Attorney, seeking a "written assurance from Seattle officials that the City refrain from prohibiting him from speaking in public areas due to poor or hostile reaction to his religious speech." *Id.* ¶¶ 102, 104. According to Mr. Meinecke, the City was enforcing "a heckler's veto" by precluding him from sharing his gospel message in public places because others disagreed with his message. *Id.* ¶ 102–103. On January 10, 2023, Seattle's Director of Police Accountability reported his findings,

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 4

acknowledging the underlying facts, but concluding that the officers followed policy appropriately in requiring him to move when others posed a threat, and properly arresting him when he refused to move. *Id.* ¶¶ 107–109.[4]

Mr. Meinecke then filed this lawsuit against the City of Seattle, Washington, Daniel Nelson, Robert Brown and Sean Culbertson,[5] asserting four causes of action:

- Violation of Free Speech;
- Violation of Due Process Clause;
- Unlawful Arrest and False Imprisonment on June 24, 2022;
- Unlawful Arrest and False Imprisonment on June 26, 2022.

Compl. ¶¶ 110–25. He seeks a declaration, a preliminary and permanent injunction, and nominal, compensatory, and punitive damages, as well as costs and attorneys' fees. *Id.* at 18–19.

By the pending motion, Mr. Meinecke moves for a preliminary injunction that enjoins Defendants from enforcing "time, place, and manner" restrictions and applying Seattle municipal code ordinance § 12A.16.010(A)(3) "to eliminate protected speech in traditional public fora whenever they believe individuals opposing the speech will act hostile toward it." Mot. 1–2, ECF No. 12.

### III.     LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations omitted). Plaintiff must make a "clear showing" that: (1) he is likely to succeed on the merits; (2) in the absence of an injunction, he would likely suffer irreparable harm; (3) the balance of equities tips in his favor; and

---

[4] The Case Summary is attached to Plaintiff's motion. Pl.'s Mot. Ex. C, ECF No. 12-4.
[5] The police officers were sued individually and in their official capacities with the Seattle Police Department.

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 5

(4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In weighing whether a preliminary injunction is appropriate, courts in this Circuit may use a "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020); *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1061 (W.D. Wash. 2019).

"Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013). Further, a district court has broad discretion in determining if a preliminary injunction should issue. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

### IV. DISCUSSION

#### A. Standing

Defendants assert that Mr. Meinecke must demonstrate standing for each form of relief he seeks, and they contend that he lacks standing to seek injunctive relief on either his facial or as-applied challenge to the City's policy. Opp'n 8, ECF No. 17 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000)). The Court shall address this issue first, because "[s]tanding is a threshold matter of jurisdiction." *LA All. for Human Rights v. Cnty. of Los*

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 6

1   *Angeles*, 14 F.4th 947, 956–57 (9th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523
2   U.S. 83, 102 (1998)).  A district court has no authority to grant relief in the form of a preliminary
3   injunction where it has no jurisdiction over the parties. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.
4   574, 584 (1999).

5          To demonstrate standing, plaintiffs must show that they "(1) suffered an injury in fact, (2)
6   that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be
7   redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).  At this
8   preliminary injunction stage, they "must make a clear showing of each element of standing." *Yazzie*
9   *v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (per curiam) (citations omitted). Plaintiffs "may rely
10  on the allegations in their Complaint and whatever other evidence they submitted in support of their
11  [preliminary-injunction] motion to meet their burden." *City & Cnty. of San Francisco v. United*
12  *States Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) (alteration in original)
13  (quoting *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (per curiam)).

14         There is no argument here that Plaintiff has standing to proceed before this Court on his
15  claim for damages for unlawful arrest and false imprisonment. *See* Opp'n 8. With regard to
16  Plaintiff's claim that his constitutional right to free speech was violated, he has pleaded that the
17  Defendants have previously prevented him from freely speaking in a public forum, and he fears
18  that he will be similarly silenced at the upcoming PrideFest event in 2023. Reply 2–3, ECF No 19.
19  Whenever First Amendment speech is implicated, "the inquiry tilts dramatically toward a finding
20  of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000); *see also Cal. Pro-Life*
21  *Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) ("Particularly in the First
22  Amendment-protected speech context, the Supreme Court has dispensed with rigid standing
23  requirements."). Plaintiff's asserted injury was and is personal, he has stated his intention to engage

24  ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
25   - 7

in similar behavior at the upcoming PrideFest event, and he seeks to prevent the same alleged injury—be silent or be arrested—occurring again. Plaintiff's allegations and evidence on the record are sufficient to establish standing at this preliminary injunction stage. Plaintiff has standing to assert his free speech claim to vindicate and protect his own constitutional rights, and further standing analysis is not necessary at this time.

### B. Preliminary Injunction

#### 1. Likelihood of success on the merits

Likelihood of success on the merits is a threshold inquiry and the most important factor in determining whether a preliminary injunction should issue. *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019) (citing *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018)). "Courts asked to issue preliminary injunctions based on First Amendment grounds face an inherent tension: the moving party bears the burden of showing likely success on the merits . . . and yet within that merits determination the government bears the burden of justifying its speech-restrictive law." *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022) (quoting *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (*en banc*)). "Therefore, in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction" on speech. *Id.* at 478.

Plaintiff contends that Seattle applies its obstruction ordinance to facilitate a "heckler's veto" to eliminate disfavored expression in traditional public fora, which is a violation of his right to free speech. Mot. 12. (citing *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*,

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 8

533 F.3d 780, 788 (9th Cir. 2008)). He claims that the City prevents speakers from reaching their desired audience whenever their message is met with hostility. *Id.* at 3. Mr. Meinecke clarifies that he "does not seek to enjoin the obstruction ordinance itself, but Seattle's policy of interpreting this ordinance to have police officers impose a 'time, place, and manner' order on speakers who come across unruly listeners." Reply 9.

The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. amend. I. Pursuant to the Free Speech Clause, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). However, the right to "free speech" is not a right without responsibility; it does not mean that one has an "absolute right to protest at any time and at any place, or in any manner of their choosing." *Menotti v. City of Seattle*, 409 F.3d 1113, 1138–39 (9th Cir. 2005); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014) ("It is equally plain that the fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views whenever and however and wherever they please.") (citations omitted)).

> Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. [R]estrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). However, "[t]he right to free speech . . . may not be curtailed simply because the speaker's message may be offensive to his

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 9

audience." *Hill v. Colorado*, 530 U.S. 703, 716 (2000). Excluding speech based on "an anticipated disorderly or violent reaction of the audience" is a form of content discrimination, generally forbidden in a traditional or designated public forum. *Seattle Mideast Awareness Campaign v. King Cnty.*, 781 F.3d 489, 502 (9th Cir. 2015).

Because Plaintiff is not challenging any specific statute or ordinance, the Court focuses on the Plaintiff's allegation that the City has implemented an unconstitutional policy, illustrated by the actions of the police officers on the occasions described in the record before the Court. Certain basics are agreed to by the parties. There is no contesting that Mr. Meinecke's speech is protected speech, and the City's streets and parks are traditional public fora. *See Frisby v. Schultz*, 487 U.S. 474, 480–81 (1988) (recognizing that streets and parks are properly considered traditional public fora); *Gathright v. City of Portland, Or.*, 439 F.3d 573, 576 (9th Cir. 2006) (noting that "preaching is a form of expression protected by the First Amendment").

And it is also clear that not "even the most vital First Amendment expressions . . . can be said automatically to overcome the need of a city to maintain order and security for its residents and visitors, in the face of violence." *Menotti*, 409 F.3d at 1140 (citation omitted).

Against this background, the Court finds that there is no indication in the record that the City's police officers acted based on the content of Mr. Meinecke's speech. Rather, their actions were prompted by physical altercations and threats of violent behavior. The police did not require Mr. Meinecke to leave the forum. Citing a "time, place, and manner" restriction, the police requested and then ordered Mr. Meinecke to move to a different area both for his own protection and to maintain order due to threats of violence. Mr. Meinecke complains that these actions, because they were in response to the crowd's negative response to his message, represent an unconstitutional "heckler's veto" that failed to leave open ample alternative avenues for his expression. Compl. ¶

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
- 10

112; Mot. 12 (citing *Ctr. for Bio-Ethical Reform*, 533 F.3d at 788 n. 4). Plaintiff compares the events that took place to those in *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 233 (6th Cir. 2015), and *Deferio v. City of Syracuse*, 306 F. Supp. 3d 492 (N.D.N.Y. 2018).

In *Bible Believers*, an evangelical Christian group alleged that the county police had taken action to effectuate a heckler's veto against them when the group displayed messages offensive to the predominantly Muslim crowd at the 2012 Arab International Festival in Dearborn, Michigan. 805 F.3d at 238–39. The officers informed the group that if they did not leave the festival, they would be cited for disorderly conduct. *Id.* at 240. The Sixth Circuit held that "when a peaceful speaker, whose message is constitutionally protected, is confronted by a hostile crowd, the state may not silence the speaker as an expedient alternative to containing or snuffing out the lawless behavior of the rioting individuals." *Id.* at 252. At the same time, the Court also recognized that consideration must be afforded for the safety of law enforcement. *Id.* at 253.

In *Deferio*, a buffer zone was established in the permit granted to the event organizers. 306 F. Supp. 3d at 512–13. The police officer interpreted the permit as providing the event organizers the right to exclude protestors such as the plaintiff from the buffer zone. *Id.* at 509. The Court found that the enforcement of the buffer zone was not narrowly tailored to promote a substantial governmental interest and granted a preliminary injunction. *Deferio v. City of Syracuse*, 193 F. Supp. 3d 119, 126–27 (N.D.N.Y. 2016).

The facts in the record before this Court are distinguishable from both *Deferio* and *Bible Believers*. Here, the Seattle police officers did not act to "silence" Mr. Meinecke, nor did they evict or banish him from the forum. Indeed, Mr. Meinecke, of his own accord, moved more than once to avoid disturbances during the hours that he attended the abortion rally. What the police did was order Mr. Meinecke to move to a safer location. He was not asked to leave the protest, and he was

arrested, and thus silenced, only after he refused to move to create a separation between himself and the crowd. Similarly, at the PrideFest event, the police did not ask Mr. Meinecke to stop speaking or to leave the event. Mr. Meinecke was, however, asked to relocate to a safe distance away from the crowd, and he was warned that noncompliance would result in his arrest for obstructing a public officer. After he refused to comply, he was arrested.

In this case, the Court must consider the competing principles that the government may not regulate speech based on listeners' reactions and that the government may regulate the time, place, and manner of speech to maintain peace and order. These considerations present "doubtful and difficult questions of law or disputed questions of fact"[6] that require further development of the record before the Court can determine whether Plaintiff is likely to succeed on the merits of his free-speech claim. Plaintiff is seeking the extraordinary relief of a preliminary injunction, and he has not carried his burden of making a clear showing that he is entitled to such relief.

### 2. Irreparable harm, balance of equities, and the Public Interest

Because likelihood of success is a threshold inquiry, when "a plaintiff has failed to show the likelihood of success on the merits, the Court 'need not consider the remaining three *Winter* elements.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal citation omitted). Given the gravity of the issues presented, the Court nevertheless will do so. As noted above, a plaintiff seeking a preliminary injunction must establish that he is likely to suffer irreparable harm in the absence of preliminary relief; importantly, a showing of a mere "possibility" of harm is not enough. *See Winter*, 555 U.S. at 20, 22 ("[T]he Ninth Circuit's "possibility" standard is too lenient."). Irreparable injury is traditionally defined as harm for which there is no adequate legal

---

[6] *Nelson*, 799 F.2d at 551.

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 12

remedy, such as an award of damages. *See Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Plaintiff's claim at issue here deals with the loss of First Amendment freedoms, and for purposes of the issuance of a preliminary injunction, such a loss, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Courts must also "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted). The Court has already noted the delicate balance between protecting an individual's right to speak freely and the City's obligation to maintain the peace. Certainly, the public interest favors the exercise of First Amendment rights. *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). At the same time, "[n]o one could seriously dispute that the government has a significant interest in maintaining public order; indeed this is a core duty that the government owes its citizens." *Menotti*, 409 F.3d at 1131.

The Court is concerned with the vague request for injunctive relief made by Plaintiff. Of note, he presents no proposed language for an injunction. The Court cannot reasonably enjoin the City from enforcing its obstruction ordinance, nor can the Court reasonably enjoin the City from enforcing time, place, and manner restrictions. The issue of an injunction requires more specificity than that. In some respects, Mr. Meinecki simply asks the Court to require the City to act constitutionally in its enforcement of its own ordinances. "[C]ourts will not countenance injunctions that merely require someone to 'obey the law.'" *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (quoting *Payne v. Travenol Lab., Inc.*, 565 F.2d 895, 897–98 (5th Cir. 1978)); *Daniels v. Woodbury Cnty., Iowa*, 742 F.2d 1128, 1134 (8th Cir. 1984) ("[A]n injunction which

does little or nothing more than order the defendants to obey the law is not specific enough."); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841–42 (7th Cir. 2013) ("An obey-the-law injunction departs from the traditional equitable principle, codified in Rule 65(d) of the Federal Rules of Civil Procedure.").

Federal Rule of Civil Procedure Rule 65(d), requires that "[e]very order granting an injunction . . . must: state the reasons why it issued; state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required . . . ." This specificity requirement "prevent[s] uncertainty and confusion on the part of those faced with injunctive orders and . . . avoid[s] the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). The Court finds Mr. Meinecke's request for a preliminary injunction is overbroad and lacks the specificity that is required by Federal Rule of Civil Procedure 65(d). If the Court were to grant Plaintiff's motion, the City may be unfairly burdened in its efforts to maintain order. On the other hand, Mr. Meinecke is free to attend the PrideFest event and any other public event as well as preach in any public fora, subject to constitutional time, place, and manner restrictions.

Accordingly, based on the record before it, the Court denies Plaintff's motion for a preliminary injunction, without prejudice to a future request should it become more apparently appropriate as the facts in the record are further developed through discovery, and if accompanied by an appropriately specific proposed injunction. The City and its police officers are reminded that expression of an idea may not be prohibited simply because others find it offensive or disagreeable; listeners' reactions are not a content-neutral basis for taking an enforcement action against a speaker; and removing a speaker due to crowd hostility seldom constitutes the least restrictive

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 14

means available to serve the legitimate purpose of maintaining order. *See Bible Believers*, 805 F.3d at 253–54.

## V.     CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for a preliminary injunction, ECF No. 12. This case shall proceed pursuant to its scheduling order, ECF No. 21.

DATED this 22nd day of June, 2023.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

- 15